**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 6, 2020**

# In the Court of Appeals of Georgia

A20A0434. FULTON COUNTY v. BERRY.

MERCIER, Judge.

On February 21, 2017, Anthony Berry was terminated for cause from his employment with Fulton County, Georgia ("the County"). Berry appealed the decision to the County's Personnel Board ("the Board"), which ultimately affirmed the termination.[1] He then petitioned the Superior Court of Fulton County for a writ of certiorari under OCGA § 5-4-1 et seq. The superior court reversed the Board's decision, and we granted the County's application for discretionary review. For reasons that follow, we reverse.

---

[1] As discussed infra, the procedural history of Berry's administrative appeal is rather complex and resulted in different outcomes at the various levels of review.

Pursuant to OCGA § 5-4-1 (a), a "writ of certiorari [to the superior court] shall lie for the correction of errors committed by any inferior judicatory," including a personnel board resolving an appeal from an employment termination decision. See *Wilson v. Latham*, 227 Ga. 530, 533 (181 SE2d 830) (1971) (resolution of appeal by municipal personnel board is judicial or quasi-judicial in nature). The superior court's scope of review, however, is limited to considering errors of law and determining "whether the judgment or ruling below was sustained by substantial evidence." OCGA § 5-4-12 (b).

Georgia courts have interpreted the "substantial-evidence standard" as "effectively the same as the any-evidence standard." *Emory Univ. v. Levitas*, 260 Ga. 894, 897 (1) (401 SE2d 691) (1991). See also *Macon-Bibb County Planning & Zoning Comm. v. Epic Midstream*, 349 Ga. App. 568, 572 (1) (826 SE2d 403) (2019) (physical precedent only) ("substantial evidence" under OCGA § 5-4-12 (b) "has been consistently interpreted to mean 'any evidence'"). In reviewing issues of fact in a certiorari proceeding, therefore, a superior court must affirm if the ruling below was supported by any evidence. See *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997). On further appeal to this Court, "our duty is not to review whether the record supports the superior court's decision but whether the record

2

supports the initial decision of the local governing body or administrative agency."

Id. (citation and punctuation omitted). As we have described:

> Neither the superior court nor this Court reweighs credibility determinations of the factfinder. In other words, because the factfinder in the initial proceedings is charged with weighing the evidence and judging the credibility of the witnesses, the superior court and this Court must view the evidence in the light most favorable to the factfinder's decision and must affirm the decision if there is any evidence to support it, even when the party challenging the factfinder's conclusions presented evidence during the initial proceedings that conflicted with those conclusions.

*DeKalb County v. Bull*, 295 Ga. App. 551, 552 (1) (672 SE2d 500) (2009) (citations and punctuation omitted).

Viewed favorably to the Board's decision, the record shows that Berry had been employed by the County for approximately 22 years at the time of his termination. On February 8, 2017, he was working as an administrative coordinator with the County's Department of Health and Wellness ("DHW"), conducting building safety inspections at a County mental health facility. The facility was undergoing extensive renovations, which required the staff to vacate and clean out the premises. At one point that day, Berry returned to his office and noticed that numerous items

3

were missing. Searching for his possessions, he looked into an open garbage dumpster located in a parking lot behind the facility. Inside the dumpster, he found items from his office, as well as a large number of mental health patient records.

Like all department employees, Berry had been trained on the importance of patient record confidentiality under the Health Insurance Portability and Accountability Act ("HIPAA"), and he thought "maybe [the records] shouldn't have been there." But Berry took no steps to either secure or remove the patient information from the open dumpster. Instead, he used his county-issued cell phone to take pictures of the records because "part of [his] job" was to document any problems he found around the building and discuss the issues in monthly meetings with his program managers. According to Berry, he also immediately reported the discovery to his supervisor, Lou Oliver, and Richie Carter, the individual responsible for cleaning out the facility for the renovations. Both Oliver and Carter testified, however, that Berry did not tell them on February 8 about the patient records in the dumpster.

The following day, Berry returned to the facility and saw a reporter in the dumpster, looking at and photographing the patient records. Berry left the area to call Oliver, explaining to his supervisor that a reporter was in the dumpster with "some

records." Oliver told Berry to ask the reporter to leave, but when Berry returned to the dumpster, the reporter was gone.

That night, a news segment aired on television regarding the confidential patient information found in the dumpster. County officials met the next morning to discuss the breach, and the County Attorney, Patrise Perkins-Hooker, began investigating the situation. Perkins-Hooker interviewed various County employees, including Berry, who insisted that he did not know about the records in the dumpster until he saw the reporter there on February 9, 2017. During the interview, however, Perkins-Hooker reviewed Berry's work cell phone, discovering that he had taken pictures of the records on February 8. Perkins-Hooker ultimately concluded that Berry knew patient information was in the dumpster on February 8 and did nothing to protect the confidentiality of that information.

In the aftermath of the incident, the County publicly apologized for exposing the confidential information, wrote letters to affected patients, and reported the breach to the United States Department of Health and Human Services. In addition, the District Health Director for DHW ("the Appointing Authority") gave Berry written notice of his termination. Specifically, the Appointing Authority asserted that he had violated three provisions of the Fulton County Personnel Procedures ("FCPP"): (1)

5

FCPP 305-16, Article 15, which prohibits "[s]abotage, malicious damage or vandalism to County property or the property of other employees;" (2) FCPP 305-16, Article 16, which prohibits "[d]ivulging confidential, classified or highly sensitive information without proper authority or for an improper use;" and (3) FCPP 305-16, Article 22, a miscellaneous provision that prohibits "any other violations or actions not specifically enumerated in [the personnel] guidelines which impair or reflect adversely upon the integrity, efficiency, good order or operation of any segment of the County Government." As to each violation, the written notice explained:

> You knew there was confidential client information in the . . . dumpster and that this was a violation of the Health Insurance Portability and Accountability Act (HIPAA), yet you failed to notify your supervisor or management of the situation. You knew this breach of confidential client information existed prior to the time that a reporter was diving through the papers in the dumpster. You did nothing to protect or preserve the confidentiality of the clients' information from the actions of the reporter or anyone else.

Berry appealed his termination to the Board, which initially reversed the Appointing Authority. The County appealed that decision to the superior court via writ of certiorari. The superior court reversed, finding that the Board had ignored

6

undisputed evidence, failed to include sufficient findings of fact in its written ruling, and exceeded its authority. It thus remanded the case to the Board "for a new hearing or to issue an order that complies with the law and applicable policies and procedures."

On remand, the Board held a new evidentiary hearing and made various findings of facts, but a majority of the Board members could not agree upon a decision. Accordingly, the Board affirmed Berry's dismissal pursuant to FCPP 300-16 (VIII) (2), which requires that "[i]n the event that a majority of the Personnel Board is unable to agree upon a decision in an appeal hearing, . . . the appealed action shall stand." Berry appealed the Board's decision via writ of certiorari to the superior court. Finding insufficient evidence to sustain Berry's termination, the superior court reversed. We granted the County's application for discretionary review, and this appeal followed.

Given the tortured procedural history in this case, we are keenly aware of our standard of review. The County's decision to terminate Berry must be affirmed if it is supported by *any* evidence. See *Smith*, supra. A review of the record shows that the evidence was sufficient.

As found by the Board, Berry had been trained on his obligations under HIPAA, including the duty of all County employees to protect and ensure the confidentiality of patient health information. As Berry admitted, such information "should be safeguarded behind closed doors." But when he found patient records in an unsecured, open dumpster on February 8, 2017, he left the records there, taking no steps to secure them.[2] His failure to protect the patient information on February 8 allowed a reporter to find and photograph the records the following day, further undermining their confidentiality. Moreover, when Berry discovered the reporter reviewing the records in the dumpster, he did nothing to immediately quell the disclosure, instead walking away from the dumpster.

Despite this evidence, the superior court concluded that Berry never sabotaged County property or divulged confidential information – the primary reasons given for his termination – because he did not place the records in the dumpster or deliberately choose to jeopardize patient confidentiality. According to the superior court, Berry "merely saw [the records] in a dumpster." We disagree.

---

[2] Although Berry asserted that he reported the breach to Oliver and Carter on February 8, they testified that he did not report the breach that day. The Board was authorized to resolve this factual dispute against Berry. See generally *Bull*, supra.

Georgia courts employ the rules of statutory construction to interpret administrative rules and regulations. See *City of Guyton v. Barrow*, 305 Ga. 799, 803 (2) (828 SE2d 366) (2019). And "[i]t is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned their ordinary, logical, and common meaning." *State v. Hammonds*, 325 Ga. App. 815, 817 (755 SE2d 214) (2014) (citation and punctuation omitted). The provisions of the FCPP available to us in the record do not define the terms "sabotage" or "divulge."[3] We thus look for the common meaning of these words in other sources, such as a dictionary. See *Hammonds*, supra. The Merriam-Webster online dictionary offers several definitions for "sabotage," the most pertinent being: "an act or process tending to hamper or hurt." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sabotage. "Divulge" commonly means "to make known (something, such as a confidence or secret)." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/divulge.

---

[3] In its ruling, the superior court cited a definition for "sabotage" purportedly included in FCPP 305-16 (V). We have been unable to find this subsection or definition in the version of FCPP 305-16 provided in the record. Thus, "because the record contains no proper proof of the [cited personnel regulation], we cannot consider its language." *Dowdell v. Fitzgibbon*, 335 Ga. App. 37, 39 (778 SE2d 414) (2015) (citation and punctuation omitted).

9

We recognize that the County's investigation produced no evidence that Berry placed the confidential patient records into the dumpster. But the evidence shows that he saw a large number of these records in the dumpster on February 8, 2017, and he knew they should be "safeguarded." Yet, instead of taking steps to protect the confidential information, he walked away from the dumpster, leaving the records in plain view without immediately notifying anyone of the breach and subsequently denying that he knew the records were there. His deliberate actions tended to hamper or undermine a key component of the patient records – their confidentiality. Furthermore, by walking away from a reporter reviewing and photographing the records, Berry allowed knowledge of the private patient information to spread to the media and beyond. Given these circumstances, the County was authorized to find that Berry sabotaged County property and divulged confidential information, as alleged in the termination notice.

Similarly, the evidence supports the conclusion that Berry's actions impaired or reflected adversely on the County. Again, by failing to protect the patient records, Berry permitted confidential information to be discovered by a reporter, resulting in news coverage of the breach and further exposure of the information. In its order, the superior court likened Berry to a "whistleblower," noting that public employees

10

should be encouraged to bring HIPAA violations "to light." But we have been cited no evidence that Berry was acting as a "whistleblower" in this circumstance. See, e.g., 45 CFR 164.502 (j) (setting forth whistleblower procedures for HIPAA violations). And we cannot agree with the superior court that Berry's termination resulted "because he did not prevent the County from being held accountable for its violations." He was terminated for failing to protect confidential patient information.

Pursuant to the County's administrative process, the Board affirmed the Appointing Authority's determination that Berry sabotaged County property, divulged confidential patient information, and acted in a way that impaired and reflected adversely on the County. The record evidence supports this determination. Accordingly, the superior court erred in reversing the Board's decision. See *Bull*, supra at 555 (1) (a).

*Judgment reversed. Miller, P. J., and Coomer, J., concur*.

11